MESHMEIER *v.* THE STATE.*

From the *Wayne* Common Pleas.
*M. Wilson* and *C. H. Burchenal*, for the appellant.
*J. Railsback*, for the state.

LAMB and Another *v.* THE STATE.

From the *Kosciusko* Common Pleas.
*L. M. Ninde*, for the appellants.

---

* The opinion deciding all the following cases was delivered in this case.

HYLAND *v.* THE STATE.

From the *Spencer* Common Pleas.
*W. C. Moreau,* for the appellant.
*D. C. Chipman,* for the state.

LEYNER and Another *v.* THE STATE.

From the *Wayne* Common Pleas.
*O. P. Morton, J. F. Kibbey, C. H. Test,* and *J. M. Wilson,*
for the appellants.
*C. H. Burchenal* and *D. C. Chipman,* for the state.

HARNEY *v.* THE STATE.

From the *Orange* Common Pleas.
*J. Payne* and *J. Cox,* for the appellant.

STERLING *v.* THE STATE.

From the *Kosciusko* Common Pleas.
*Dodge* and *Copeland,* for the appellant.

ZELT *v.* THE STATE.

From the *Hamilton* Common Pleas.
*Moss* and *Evans,* for the appellant.

SHUBERT *v.* THE STATE.

From the *Jennings* Common Pleas.
*Walker* and *Vawter,* for the appellant.

THE STATE *v.* MONROE.

From the *Scott* Common Pleas.
*J. E. McDonald,* attorney general, for the state.
*E. Dumont, O. B. Torbet,* and *P. H. Jewett,* for the appellee.

Nov. Term,
1858.

MESHMEIER
v.
THE STATE.

That part of the case of *Maize* v. *The State*, 4 Ind. R. 342, in which a part of the liquor law of 1853 was held to be constitutional and valid, overruled.— DAVISON, J., dissenting.

The liquor act of 1855 repealed all laws inconsistent with its provisions; hence it repealed that of 1853; and though the former act has been declared unconstitutional, the repeal was effectual, and the act of 1853 was not revived.—HANNA, J., dissenting.

*Wednesday,*
*January 12,*
1859.

WORDEN, J.—This was a prosecution by the state against the appellant for retailing spirituous liquors in violation of the liquor law of *March*, 1853. The defendant was convicted and judgment rendered against him, over a motion in arrest.

Two questions are presented by the record—

*First.* Was the act of *March* 4, 1853, ever valid and binding as a license law?

*Second.* If so, was it repealed by the prohibitory law of *February* 16, 1855?

The provisions of the act of 1853, upon which the first question depends, are contained in the first five sections thereof, which are as follows:

" Sec. 1. Be it enacted, &c. That no person shall retail spirituous liquors except for sacramental, mechanical, chemical, medicinal, or culinary purposes, without the consent of the majority of the legal voters of the proper township, who may cast their votes for license at the *April* election; nor without filing with the auditor of the proper county his bond, with at least four freehold sureties, to be approved by such auditor, in the penal sum of not less than five hundred nor more than two thousand dollars, proportioned according to the number of inhabitants of the township, conditioned for keeping an orderly house, and for the payment of all fines, penalties, or damages that may be incurred under the provisions of this act.

" Sec. 2. The consent required in the preceding section shall be determined by the number of votes cast for or against license, to be expressed on the ticket; and no ticket on which the same is not expressed, shall be counted either way; such consent shall extend for one year from the period of such election, and shall extend to all persons who

shall comply with the requirements of the first section respecting bond and security.

"Sec. 3. Upon the filing of such bond, the auditor shall issue to the person filing the same, a license to retail spirituous liquors, which shall be good for one year from the day of the election at which such consent was granted to retail spirituous liquors, and shall, during such year, be presumptive evidence of the right of such person to retail such liquors."

The fourth section defines the word "retail," and the fifth provides a penalty for a violation of the preceding sections.

In the case of *Maize* v. *The State*, 4 Ind. R. 342, this act underwent a judicial examination, and it was there held that so much of it as related to the township vote, was void, as being inconsistent with the constitution of the state; but that such part might be considered as stricken out, leaving the law in force as a valid license law. This decision has been followed in the subsequent cases.

That branch of the decision which holds so much of the act as submits the question of license to a vote of the people of the township to be unconstitutional and void, we think, is entirely correct, and shall enter upon no discussion of that subject.

But the other branch of the decision, holding that such portion may be considered as stricken out, and the law enforced as a valid license law, does not rest upon an entirely satisfactory foundation.

The proposition that a statute may be good in part, and in part void, because unconstitutional, is not controverted. It is established by numerous authorities. *Commonwealth* v. *Kimball*, 24 Pick. 361.—*Fisher* v. *McGirr*, 1 Gray, 22.— *Armstrong* v. *Jackson*, 1 Blackf. 374.— *Clark* v. *Ellis*, 2 *id.* 8.

But it would seem that the provisions of the statute held to be constitutional, should be substantially the same, when considered by themselves, as when taken in connection with other parts of the statute held to be unconstitutional; or, in other words, where that part of a statute which is unconstitutional, so limits and qualifies the remaining

portion, that the latter, when stript of such unconstitutional provisions, is essentially different, in its effect and operation, from what it would be were the whole law valid, it would seem that the whole law should fall. The remaining portion of the statute, when thus stript of its limitations and qualifications, cannot have the force of law, because it is not an expression of the legislative will. The legislature pass an entire statute, on the supposition, of course, that it is all valid, and to take effect. The Courts find some of its essential elements in conflict with the constitution, strip it of those elements, and leave the remaining portion, mutilated and transformed into a different thing from what it was when it left the hands of the legislature. The statute thus emasculated, is not the creature of the legislature; and it would be an act of legislation on the part of the Courts, to put it in force. The Courts have no right thus to usurp the province of the legislature.

The statute in question prohibits the retail of spirituous liquors (save for the purposes therein named), except upon two conditions: *First*, the consent of the majority of the voters of the township who may cast their votes on that subject; and, *secondly*, giving bond and procuring a license.

The condition respecting the vote, so enters into, qualifies, and forms a part of the prohibition, as to leave that an essentially different enactment, when stript of such condition. The first condition qualifies the prohibitory feature as much as the second, and the law could as well be enforced with the second condition stricken out, as the first. In such case, the law would be purely prohibitory, and void, as has been held in reference to the statute of 1855. Suppose the condition in reference to giving bond and procuring license were void by the constitution. In such case, it will hardly be contended that it might be stricken out, and yet, that the balance would be substantially the same law, as when taken in connection with the part providing for bond and license. There is conceived to be no difference in principle between striking out the first and the second condition. They both, to a greater or less extent, enter into, and form a part of an entire provision. They are so blended

with the entire enactment, that neither can be separated therefrom without destroying the harmony of the whole, and leaving the remaining portion to have an effect different from that shown by the whole law to have been the intent of the legislature. Upon this view of the statute, the case of *Washington* v. *The State*, 8 Eng. (Ark.) 752, seems to be in point. The defendant was indicted for keeping a ten-pin alley without paying a license either into the state or county treasury. The Court says:

"For the reasons here set forth, we are bound to decide that so much of the act of the 8th of *January*, 1845, as prohibits any person setting up a billiard table or ten-pin alley without paying a sum of money into the state treasury as a license therefor, is repugnant to the constitution and void; because there is no power to do that indirectly which cannot be done directly; and the license is none the less a tax for the privilege of setting up such table or alley, because collected or enforced by means of a criminal prosecution.

"The indictment in this case also contains a count for setting up and keeping a ten-pin alley, without first paying the sum of 25 dollars into the treasury of *Jefferson* county. Although our opinion is that the General Assembly may constitutionally impose, or authorize the county Court to impose, such tax by conferring on them the power to grant licenses as a means of raising revenue for county purposes; and although the payment of the sum specified would seem to be an implied license to exhibit the table or alley, yet the whole scope and provisions of the act are so intimately blended that we do not feel warranted by any rule of judicial interpretation to separate these provisions in order to give to a part of the act an effect we cannot presume was intended. The whole enactment must therefore stand or fall together."

In *New York* and *Pennsylvania* it is held, that a statute, enacted by the legislature, but to take effect only upon being adopted by a vote of the people, is utterly void. *Thorne* v. *Cramer*, 15 Barb. 112.—*Barto* v. *Himrod*, 4 Seld.

483.—*Parker* v. *The Commonwealth*, 6 Barr, 507.   See, also,
*Rice* v. *Foster*, 4 Har. (Del.) 479.

It is difficult to perceive any well defined distinction, in
the particular under consideration, between the statutes of
those states and the one now in question.   There, it is
true, the law was not to take effect unless adopted by a
vote of the people.   Here the law was formally put in
force, but the prohibition provided for was to have force or
not, as might be determined by a vote of the people.   The
difference consists more in form than substance.

The prohibition enacted, was absolute, unless consent to
retail should be given by the voters.   Strike out the pro-
vision as to the vote, and the prohibition, if in force at all,
would remain absolute.   If the provision as to the vote may
be stricken out, as not modifying the prohibition, then the
prohibition, being absolute, would be void for the same
reasons that render the act of 1855 void.

The prohibition, then, was to depend upon the votes that
might be polled, and this is equivalent to a law which is
to take effect only upon being adopted by a vote.

Mr. SEDGWICK, in his work on Statutory and Constitu-
tional Law, (p. 166, note,) after discussing the validity of
statutes left to the determination of a popular vote, refers
to the case of *Maize* v. *The State*, *supra*, and says he
doubts whether, logically, the whole act should not fail.
" *Non constat* that the legislature would have passed the
law without the clause in question.   The *New York* and
*Pennsylvania* decisions appear to me, in this respect, to rest
on a sounder basis."

But whether the foregoing views be correct, or otherwise,
a majority of the Court are of opinion, that on the suppo-
sition that the law of 1853 was valid as a license law, it
was repealed by the temperance law of *February*, 1855.
The latter act (§ 39) provides that "that all acts and
parts of acts inconsistent with the provisions of this act
are hereby repealed."   The provisions of the act of 1853,
as a law by which liquors are licensed to be sold, are ut-
terly inconsistent with the law of 1855, by which such sale
is prohibited.   The former, if valid, is a regular license

law, by which any one complying with its provisions may
sell spirituous liquors, while the latter utterly prohibits
such sale except by authorized agents as provided for
therein. The inconsistency is apparent and undoubted.
It is the duty of the Court in the construction of statutes,
to ascertain, by legal rules of interpretation, the intention of
the legislature, and to give effect to that intention, where it
does not conflict with any constitutional requirement or
limitation.

It is insisted that inasmuch as the general provisions of
the act of 1855 are void, because unconstitutional, nothing
is repealed, because nothing is inconsistent with an uncon-
stitutional law.

The reasoning, as applied to the case, we think, is not
sound.

In the act we find a clause which, in terms, repeals all
acts and parts of acts inconsistent with its provisions.
Did the legislature intend, by such clause, to repeal abso-
lutely such inconsistent acts, or make such repeal depend
upon a future contingency, viz.: the contingency of the
new act being held unconstitutional? Had the question
as to the repeal arisen before any question had been made
as to the constitutionality of the act of 1855, no Court
would, for a moment, have hesitated to declare the former
laws repealed.

An unconstitutional enactment would not, of course, re-
peal by implication any former law. But here is an express
repeal. The repealing clause stands by itself, and is sub-
ject to no constitutional objection. It has the same effect,
when taken by itself, as when taken in connection with the
other parts of the act. It only refers to the other parts of
the act incidentally, for the purpose of showing what is
repealed. It repeals all former laws inconsistent with the
provisions of that act. No reference is had to the validity
or invalidity of those provisions. The terms, *inconsist-
ency* and *validity* involve entirely distinct ideas. Whether
a former law is inconsistent with the "provisions" of the
latter act, is one question. Whether the "provisions" of
the latter act, are valid or invalid, is another and different

question. The legislature made certain "provisions," and repealed all laws inconsistent with them. We think that repeal was absolute, and not dependent upon the validity or invalidity of the provisions thus made. We are aware that there are some authorities that seem to look the other way; but we cannot make up our minds to follow them, as in doing so we should be doing violence to the dictates of our judgment. We know of no rules of judicial interpretation that would authorize us to declare that a plain and positive legislative enactment was intended by the legislature to have effect only upon the condition that other enactments should be held valid, unless such intention is expressed or fairly implied. We must presume that the legislature, in framing the act of 1855, intended so to frame it as that it should all be constitutional and valid. If, when they enacted the repealing clause, they believed the entire act valid, and intended to repeal all laws inconsistent with its provisions, such repeal must be effectual, whatever may be the fate of the balance of the act.

DAVISON, J.—I concur in the opinion that the act of 1853 was repealed by the act of *February*, 1855; and am also of opinion that the act of *March* 2, 1855, repealing the 3d section of the act of 1853, so far destroyed the effect thereof, that no prosecution could be maintained thereon for retailing. But I dissent from the ground assumed in the former part of the opinion of the majority of the Court. I am of opinion that the case of *Maize* v. *The State* was correctly decided.

HANNA, J.—I dissent from that portion of the above opinion which tends to sustain the doctrine, that by an unconstitutional statute, containing no positive repealing clause, any former statute should be repealed, but concur in the former portion of the opinion.

*Per Curiam.*—The judgment is reversed. Cause remanded to be dismissed.