[*General Term, April* 1873.]

ELLA C. GRANGER *v.* JOSEPH KNIPPER AND H. J. CORDESMAN.

SAME *v.* JOHN KLOSTERMAN, JOSEPH KLOSTERMAN, AND JOSEPH KLOSTERMAN AS TRUSTEE OF CATHARINE KLOSTERMAN, AND CATHARINE KLOSTERMAN.

Under what is known as the "Adair liquor law," 67 Ohio L. 101, 102, no civil action for damages against the seller of intoxicating liquors, or the lessor or owner of the premises, can be maintained by the wife, injured in her means of support by reason of the intoxication of her husband caused by such sales, unless the sales were *unlawful.*

Whether *knowingly suffering* intoxicating liquors to be sold by a lessee in violation of law, upon the premises, on the part of the lessor or owner thereof, who has previously leased them for lawful purposes to such lessee, can amount to "*knowingly permitting*" such illegal use of the premises or not, *quære?*

The supplementary act of 1866, S. & S. 748, is, as its title imports, merely supplementary to the law of 1854, providing only for the punishment of middle-men or "go-betweens," who purchase for or furnish to those to whom intoxicating liquors can not be lawfully sold, such liquors, and for which neither they nor the sellers would otherwise be liable, though, by the separate acts of the two classes, the mischief intended to be prevented by the law of 1854 would be perpetrated.

The "Adair law" of 1870, so far as it gives a right of civil action to the classes of injured persons named against those who *unlawfully* sell intoxicating liquors, has been held valid and constitutional by the Supreme Court in the case of *Mulford* v. *Clewell,* 21 Ohio St. 191; and no court inferior in jurisdiction to the Supreme Court has authority to hold otherwise, but is bound by such decision.

*George Harrison,* and *Matthews & Ramsey,* for plaintiff.

*Stallo & Kittredge,* for defendants.

YAPLE, J.   These cases come before us by reservation from Special Term, on the several demurrers by the defendants to the petitions.   The cases can properly be considered together.

In the first case, the plaintiff, as the wife of Sheldon A. Granger, whom she married in 1866, he then being a sober man and skilled in his trade, sues Knipper and Cordesman, to recover damages for injury to her means of support, for the sales by Knipper to her husband of intoxicating liquors, between April 18, 1870, and May 30, 1872, he being during all that time an habitual drunkard, laying her damages against them at $10,000. While she avers that her husband became intoxicated by drinking the liquors so sold him by Knipper, she wholly fails to allege that Knipper knew that he was a person in the habit of getting intoxicated, or that any of such sales were made unlawfully. She then states that the fee of the premises upon which such sales were made (describing them) is owned by Klosterman, who knowingly permitted the sale of intoxicating liquors upon the same. It is not averred that Klosterman leased the premises to his co-defendant, or that he knowingly permitted the sale of such liquors to Granger.

In the second case, and covering the same period of time that is mentioned in the first, she claims that, upon certain premises described in her petition, intoxicating liquors were sold to her husband, whereby he became intoxicated and she injured thereby in her means of support. It is not stated that the seller or sellers, or any of the defendants, knew that her husband was in the habit of getting intoxicated, or that he was intoxicated when any sale was made to him, or that any of such sales were in violation of the statute.

She alleges that, in 1861, John Klosterman conveyed the premises to Joseph Klosterman, in trust for the benefit of Catharine Klosterman, and for other purposes, among them, to pay Catharine Klosterman twenty-five dollars per month during her life, and to convey the fee to John or Catharine, whichever should survive the other. It is then stated that, during such alleged period of time sales of intoxicating liquors were allowed to take place upon the premises, the defendants having full knowledge of the same. Who the

seller was, or whether a lessee of defendants or not, is not stated.    The damages are laid at $10,000.

It is claimed that the facts stated in neither petition are sufficient to constitute a cause of action against any of the defendants.

For a clearer comprehension of the questions calling for our determination, it may be well to review the legislation of the state upon this subject.    In 1854 (2 S. & C. 1431, etc.), a statute was enacted, punishing by fine and imprisonment, the sale, in any quantity, of intoxicating liquors to be drank in, upon, or about the building or premises where sold, etc.; to minors, unless upon the written order of their parents, guardians, or family physician; to persons intoxicated, or who are in the habit of getting intoxicated; or to keep a place where such liquors are sold in violation of the act, such places being declared nuisances, and to be shut up and abated on conviction of the keepers.    Certain liquors, except they should be sold to habitual drunkards, intoxicated persons, or minors, were excepted from the operation of the statute.

As all such liquors were, by the common law of the state, legitimate articles of manufacture, commerce, trade, and sale, they remained so, except to the extent, strictly, that selling them was made illegal.    The law invited investments and dealings in this species of property as much as in any other.    They were as fully protected as any other kinds of business, and involved those engaged therein in no legal liabilities that other legitimate callings did not subject those to who followed them.

To the extent that such sales were made illegal, the statute making them so was early sustained by our Supreme Court, and has uniformly been held constitutional and valid. So far the law is settled, and this court has no power to question it.

It followed, necessarily, that where the legislature has power to declare any act of a person illegal or criminal, it has power to make such person liable for damages, in a

Granger *v.* Knipper and Cordesman.

civil action, to any one injured in his or her rights by the commission of such illegal and criminal acts. The seventh section of the act of 1854 accordingly conferred upon every wife, child, parent, guardian, employer, or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, a right of action against any person who should, by selling intoxicating liquors " *contrary to this act*," cause the intoxication of such person, for all damages actually sustained, as well as exemplary damages, etc. The right to maintain such action by an employer against one who sold his employes intoxicating liquors, whereby they became drunk and neglected his work, and thus injured him, was sustained by our Supreme Court, in the case of *Duroy & Blinn* v. *Letcher*, 11 Ohio St. 331; and recently, in *Schneider* v. *Hosier*, 21 Ohio St. 98, the court sustained such action in favor of the wife, to whose husband the defendant had sold such liquors, in violation of the act of 1854.

In 1866 (S. & S. 748), a supplementary act was passed, making it unlawful for any person or persons to buy for or furnish to any person, who is at the time intoxicated, or in the habit of getting intoxicated, or to buy for or furnish to any minor, any intoxicating liquors whatsoever, unless given by a physician in the regular line of his practice. This act clearly does not affect, in any way, the law of 1854, but is, as it purports to be, supplementary to it. The first act aimed to punish the dealer or seller. But the classes of persons mentioned in the act of 1866 might get others to purchase for them, to whom the dealer could lawfully sell; and thus both the dealer and " go-between " would escape, though the mischief intended to be remedied by the law would be done. This act simply provides for punishing such " go-betweens."

Now, suppose that in the *seventh* and *tenth* sections of the act of 1854, prescribing and regulating the civil liability to an action for damages of the seller of intoxicating

liquors, the words " *contrary to this act* " had been omitted, would such seller have been liable, upon any fair construction of the statute, for injuries resulting to others from legal sales? The law would not have expressly said that he should be; and being in derogation of the common law, it would have to be strictly construed. Mere general words, in such cases, are to be restrained in their meaning, so as to work out equity and not hardship. The question would be, Is there a primary duty devolved by the law upon persons not to sell any intoxicating liquors at all? The answer would be obvious: No. Except in certain cases, every man has the legal right to sell liquors, the same as he has to sell guns, gunpowder, knives, pistols, and edge-tools, with all of which the purchaser may inflict injury or death upon others, and which he would not be able to do but for the sale to him of such dangerous agencies. The seller must inflict what the law recognizes as an *injury* upon another, before that other can sue him for damages. But what is an injury in contemplation of law? It is a violation of a legal right of another. Such legal right on the part of a wife, to prevent everybody from selling her husband intoxicating liquors, can not exist against those who do not know his habits, and who deal with him as with a proper customer; for, as to all such, the seller may sell such liquors as legitimately as gunpowder. If this be not so, then none can legally deal in such liquors at all. They would wrongfully make every sale; and because of that, and that alone, could they be liable to others sustaining injury in consequence thereof. Such injuries, so far as the seller is concerned, come under the category of mere *accident*, which always excuses where the act was lawful.

This restricted construction was actually put upon the law of 1854, by the Supreme Court, in the case of *Miller* v. *Ohio*, 5 Ohio St. 275. Proof was given at the trial that a sale was made to a person in the habit of getting intoxicated, but under circumstances tending to show that the liquor was obtained under false pretenses, etc. It was held

error in the court to charge the jury that if the defendant had no intention to violate the law, but that the purchaser in procuring it imposed upon him, he sold at his peril, and must be deemed guilty under the law.    The bill of exceptions in that case will show (for I was of counsel for Miller) that the false pretenses, the imposition practiced on the seller, were simply these : The purchaser of the liquor brought and had filled with whisky, several times, a bottle partly filled with roots, exhibiting the first time a physician's prescription for it.    The act did not provide that it should be lawful to sell intoxicating liquors *to* a person in the habit of getting intoxicated upon the prescription of a physician.    It broadly provided that it should be unlawful to sell *to* such persons at all.    It was argued, and the court below held, that the general words of the act prohibited such sales.    The Supreme Court restricted their generality, and held such sales to be lawful.

In 1870 (67 Ohio L. 101, 102), the legislature amended and repealed original sections 7 and 10 of the act of 1854, making many additions thereto, which need not here be noticed, and omitted the words, *sold* " *contrary to this act,*" in speaking of the civil liability for damages of the sellers of intoxicating liquors; but it is not said, expressly, that such sellers shall be liable for damages for injuries resulting from legal as well as illegal sales.    In one sense, the amendatory sections are inserted in the statute of 1854, and are parts of that act; in another, they are a distinct act, enacted sixteen years after the first.    To have said " contrary to *this* act," would have been the source of doubt and ambiguity ; for the last act did not define what sales were contrary to *it*.    The legislation is in derogation of common law; must be strictly construed ; and, had those words been retained, it would, doubtless, have been contended that the act made no sales contrary to *it*—that all illegal sales were but contrary to the act of 1854, not the act of 1870.

The fair construction, then, of the act of 1870, is, that the sales of intoxicating liquors, which lay the foundation of any action therein given, must be *unlawful* sales; and we so hold.

"A power derogatory to private property must be strictly construed, and not enlarged by intendment." Dwarris' Stat. 648.

This certainly applies with peculiar force where a liability is claimed to be imposed for the consequences of doing a legal act.

"If general words follow an enumeration of particular cases, such general words are held to apply only to cases of the *same kind* as those which are expressly mentioned." Id. 635.

That civil actions under this law are in their nature penal, see *Schneider* v. *Hosier*, 21 Ohio St. 110; and for instances of the restricted application of general words, see *Canal-boat Housatonic* v. *Kanawha Salt Co.*, 7 Ohio St. 261; *Anders* v. *Spargur*, 19 Ohio St. 577; *Ohio, ex rel, etc.* v. *Lee et al.*, 21 Ohio St. 662, and cases cited in argument; *Insurance Companies* v. *Wides*, 14 Wal. 375–382. And, *e converso*, see the decisions under 13 Elizabeth, as to the conveyance of property with the intent and purpose to defraud, etc., creditors, where the rule that statutes against fraud are to be liberally construed, so as to prevent the mischief and effect the objects. *Jamison* v. *McNally*, 21 Ohio St. 295.

Now, these seventh and tenth sections are inserted in the act of 1854, which creates and treats of illegal offenses; and they are to be construed by the context, embracing the entire act. If they were a separate, independent statute, the difficulty in construing them, in this respect, would be greater.

"The general words of a penal statute shall be restrained for the benefit of him against whom the penalty is inflicted." Dwarris, 634.

This question is one of the highest importance, since many millions of dollars and thousands of business men in

this state are employed in the manufacture and sale of intoxicating liquors of various kinds; and if, while they intend to violate no law, but to follow, legitimately, a business which it sanctions, and thereby invites engagement in, they are to be held pecuniarily liable in damages for all accidental, unforeseen, and unintended injuries, caused to others thereby, a great wrong will be done them, which the law will suffer no other class of lawful business men to suffer at its hands. We think such was not the intention of the legislature in adopting this legislation.

This disposes of the case as to Knipper, the alleged seller of the intoxicating liquors mentioned in the first case. The demurrer must be sustained as to him.

For a stronger reason, the demurrers of all the landowners, in both cases, must be sustained, there being no averment that any such liquors were ever illegally sold upon the premises.

Several other questions are raised and ably argued by counsel in behalf of the demurrer:

1. They claim that the act of 1870 amends and repeals sections 7 and 10 of the statute of 1854; that many portions of the act of 1870 are unconstitutional, and so connected with, and inseparable from, the constitutional portions, as to render the entire statute void; and that the old law being repealed, there is no right given by law to maintain any civil suit whatever in this class of cases.

In answer to this, it is sufficient for us to say that our Supreme Court, in *Mulford* v. *Clewell*, 21 Ohio St. 191, have decided that, under the act of 1870, such an action can be maintained in cases where injury is caused to the wife, etc., by the unlawful sale of intoxicating liquors. The court decide no more than that the action was by a wife for injury to her means of support, resulting from the sale to her husband of intoxicating liquors, he being a person in the habit of getting intoxicated, and the seller knowing of such, his habit.

The law and the legislation of the state was before and

familiar to the court, and they necessarily found the statute to be in force and constitutional, so far as the class of cases covered by that decision is involved. We can not annul that decision. If parties desire to have it reconsidered, they must address themselves to the Supreme Court. *Commissioners Perry Co.* v. *Huston,* 5 Ohio St. 497 ; *Meshmeier* v. *The State,* 11 Ind. 486.

2. Another question presented is, what amounts to " *knowingly permitting* " intoxicating liquors to be sold in violation of law, on the part of a lessor of premises who may have rented them to another for legal purposes, and the lessee subsequently engages in the illegal sale of intoxicating liquors? Can the lessor, before the lease is determined by forfeiture or by resorting to the courts for injunction, have any power or right to control the use of the premises by the lessee? Must he not have a present absolute right to control the use before he can *permit?* Can permission exist without active participation in the control of the property? Can the law be construed as laying hold of the lessor as a hostage for the lawful behavior of his tenant, and hold him to *knowingly permit,* where he, merely *knowingly, suffers* the unlawful thing to be done by one who has exclusive possession and control as against him and all the world? If obliged to resort to law for an injunction to restrain or to compel a forfeiture, the breach of duty being of conditions subsequent, will not the very law which exacts a resort to it, apply the strictest rules to the lessor's case, and estop him from a remedy upon the slightest grounds of acquiescence, as the once accepting of rent after having reasonable grounds to believe in the existence of the unlawful user, or deny him relief except upon proof beyond a reasonable doubt? *Strader* v. *Mullane,* 17 Ohio St. 626 ; *Fuller* v. *State,* 12 Ohio St. 433.

In the second of these cases, it is claimed that John Klosterman and Catherine Klosterman are two removes from the occupant's right to use the premises as he pleases— John having only the right to have the trustee, in whom

the legal title and control thereof are vested, convey to him in case he shall survive Catherine, and Catherine having only an annuity of twenty-five dollars per month for life charged upon the same. The trustee and tenant both stand between them and any present right or power to control the use of the property; and hence, that they can not even knowingly *suffer*, let alone "*permit*," any use of the premises whatever.

It is claimed that this distinction between knowingly suffering and knowingly permitting, is recognized and settled in the case of a partner retiring from a firm, which continues to use his name with his knowledge, he not forbidding it; that he will not render himself liable for the debts of the new firm, because he has failed to forbid the use of his name; to become liable, he must authorize such use. *Newsome* v. *Coles*, 2 Camp, 617; 1 Lindley's Part. 414, 415.

3. It is next claimed that if, in the case last supposed, the owner shall be held to knowingly permit the lessee to sell intoxicating liquors upon the leased premises, it will be on the assumption that the lessor has the right to forfeit the lease, the act declaring that every such lease shall be void; and it is insisted that, as such proceedings are not *in rem* against the property, if a lease be made for lawful purposes, and the lessee subsequently commits unlawful acts upon, or uses the premises in an unlawful trade, the state has no constitutional power to declare it void and forfeited in consequence of such unlawful acts or user; for section 12 of the bill of rights, in our state constitution, forbids forfeiture of estate, even on conviction for crime; and that for a stronger reason a leasehold estate can not be authorized to be forfeited to the lessor for the lessee's criminal acts; and if not, the lessor would have no more right to obtain an injunction to restrain such use than a mere stranger. His right would be restricted to other injuries of a private character peculiar to his estate.

These are both grave questions, but this case does not fairly raise and present them for decision to us, and we

feel compelled to refrain from giving utterance to mere *obiter dicta* in any case. Many questions will arise under this legislation, and we deem it best to decide them only when fairly brought before us. in cases we may be called upon to determine.

Demurrers sustained.