(Hamilton County Common Pleas Court.)

F. M. GORMAN, ASSIGNEE FOR THE BENEFIT OF THE CREDITORS OF AUGUST RIEHLE, v. ADELHEID BEPLER AND J. B. DOPPES & SONS.

---

1. The act of April 13th, 1894, (91 O. L., 135,) having been declared by the supreme court to be unconstitutional and void, in so far as it gives a lien on the property of the owner, to sub contractors, laborers, and those who furnish machinery, material, or tile to the contractors, the remaining parts of the act, together with the repealing clause, are also invalid.

2. Hence the Mechanic's Lien Law is contained in the provisions of the statutes on that subject as they existed prior to the passage of that act.

---

HOLLISTER, J.

On the trial of consolidated actions involving the rights of the parties named in the title, it appeared that Riehle, a builder, constructed a house for Adelheid Bepler, and was paid what was due him therefor less $189.60, which she is ready to pay to whomsoever is entitled to it. Riehle was indebted to J. B. Doppes & Sons, for lumber used in building the house, in the sum of $479.04, for which they sought to obtain and enforce a lien against Mrs. Bepler's property, on which the house had been built. All of the steps to perfect the lien had been taken by Doppes & Son as provided by the Mechanic's lien law, as amended April 13th, 1894, 91 O. L., 135, and they had also complied with the requirements of secs. 3193, 3194 and 3195, as they stood prior to that act.

As they were sub-contractors under Riehle, standing in no relation of privity with Mrs. Bepler, their case comes within Young v. The Lion Hardware Co., 36 B., 315, wherein it is held that the act of April 13th, 1894, "in so far as it gives a lien on the property of the owner to sub-contractors, laborers, and those who furnish machinery, material or tile to the contractors, is unconstitutional and void." Riehle made an assignment for the benefit of creditors to Frank M. Gorman.

The question is, who is entitled to the $189.60, still due for the construction of the building, Doppes & Sons or Riehle's Assignee?

The act of 1894, re-enacts sections 3184, 3188, 3193, 3194, 3195, 3197, 3200, and expressly repeals section 3184, as amended April 18th, 1892, sections 3188, 3193, 3194, 3195, 3196, 3197, 3198, 3199, 3200, 3201, 3202, 3203 and 3204. The act is, and is clearly intended to be a substitute for the law as contained in the repealed sections. The substantial difference so far as the rights of these parties are concerned between the law as it stood prior to the act of 1894, and the provisions of that act, was an enlargement of the remedy of sub-contractors, laborers, material men etc., by giving them a lien on the owner's property. Under the old law the sub-contractors (sec. 3193, 3194) might at any time, not exceeding sixty days from the performance of labor or delivery of material, file with the owner, or board or officer, if the work were of public nature, a statement of the labor performed or material furnished and the owner, board or officers or authorized clerk, agent or attorney must, after such notice, detain in his hands all subsequent payments to secure the claims of the sub-contractors, laborers, etc., who intervened before the next subsequent payment under the contract or within ten days thereafter. And section 3195 provided for filing a copy of the statement with the county recorder, in order to bring notice to fellow laborers, material men and sub-contractors.

But the act of 1894, takes away from these

sections their application to cases where the labor is performed for, or material furnished to owners of property, and leaves them effective only as against a public board or officer, and transfers bodily, so to speak, the rights of the sub-contractor etc., from the fund in the hands of the owner applicable to the liquidation of his obligation to his contractor, to the very property of the owner himself, so that in any event the sub contractor himself shall be sure of his money, although the owner may have paid all he contracted to pay. To that end section 3184 was amended by giving a lien for all labor or material expended upon, or furnished to the building. The entire object of the law, on its face, as appears from a consideration of all its sections taken together, and from comparison between its provisions and the sections of the Statutes which it superceded, was to add to the theretofore existing rights and remedies of the sub-contractors, laborers and material men, operating under the immediate contractor with the owner.

The rights and remedies against the fund in the owner's hands were eliminated from sections 3193, 3194, 3195, as they stood before the act of 1894, because and only because those rights and remedies were no longer necessary when merged into the superior security of a lien

The act, although embracing several sections, specifically designated by the number of the sections sought to be repealed, was a single act, with but one object. A Mechanic's Lien Law which should give to the classes of mechanics named, a lien against the owner instead of a right to funds in his hands as yet unpaid to his contractor, but a right to the fund only, for reasons of public policy, when they were engaged upon public work. Sections 3193, 3194 and 3195 were repealed only for the purpose of carrying that object into effect. Since the act of 1894 failed in its object, the mechanics whose remedies it sought to enlarge, have lost all remedies, if it be held the repealing clause of the act is operative.

The Legislature had in mind a scheme of legislation whereby greater rights were granted to mechanics than they had theretofore enjoyed. So far as the new plan differed from the old, the old was repealed. Where the old was in consonance with the new, the old was re-enacted. When the new feature of the lien is taken away. there is no reason for the act of 1894. With that feature eliminated the act absolutely takes away the rights of the mechanics to the fund. The effect of the repeal is, therefore, to accomplish a result directly opposite to that which the legislature sought to attain.

It may be said, with a reasonable degree of certainty, that the legislature would not have undertaken to repeal sections 3193, 3194 and 3195 excepting only for the purpose of enacting a new and more beneficial remedy and of substituting it for the remedies theretofore existing in favor of those whose interests they were seeking to subserve.

. I am of opinion that it was the intention of the legislature to repeal those sections only because they were substituting for their provisions, something which they thought was advantageous, and having failed in their main object, the efforts incidental to carrying that object into effect are equally abortive. Nor is authority wanting to justify this conclusion. In state of Ohio ex rel. v. Smith 48 Ohio St. 211, the supreme court held the act creating a "Board of City Affairs for Cincinnati, was unconstitutional. This act purported in expressed terms to repeal the act establishing the "Board of Public Improvements" for Cincinnati. The effect of the decision was to re-instate the Board sought to be superseded, the court saying, on page 219: "As the act itself is invalid, the repealing clause must also be held inoperative, as we cannot suppose that the legislature would have repealed the act creating the Board of City Improvements, without providing any substitute therefor." The Court of Appeals of New York, held, with respect to a certain act that, "All the provisions are connected as parts of a single scheme, and that the incidental provisions must fall with the main purpose of the act." Jones v. Jones, 104 New York, 235 and 235. In Spraigue v. Thompson, 118 U. S., 90, it appeared that the state of Georgia had enacted a law relative to the employment and compensation of pilots of ships bearing towards its ports, or between its ports and South Carolina or Florida, but excepted from the operation of the law coasters in the state of Georgia. Under section 4235 U. S. Rev. Stat., this legislation was valid, but section 4327 U. S. Rev. Stat., provided that no provisions of a state law should make any discriminations in the rate of pilotage between vessels sailing between the ports of different states, and annulled all such provisions in existing laws. It was accordingly held that the legislature of Georgia could not make any exceptions in favor of coasters in that state, and on the point under discussion here. Mr. Justice Matthews says at page 94: "It was held, however, by the Supreme Court of Georgia, in the case now before us, that so much of the section as makes these illegal exceptions may be disregarded, so that the rest of the section as thus read may stand, upon the principle that a separable part of a statute which is unconstitutional, may be rejected and the remainder preserved and enforced. But the insuperable difficulty with the application of that principle of construction to the present instance is that by rejecting the exceptions intended by the legislature of Georgia, the statute is made to enact what confessedly the legislature never meant. It confers upon the statutes a positive operation beyond the legislative intent, and beyond what anyone can say it would have enacted in view of the illegality of the exceptions." Accordingly the whole act was annulled.

And the same learned Justice uses this language in Poindexter v. Greenhow, 114 U. S, 270, at page 304: "The acts of assembly

in question must be taken together, as one is but an amendment to the other. The scheme of the whole is indivisible. It cannot be separated into parts. It must stand or fall together. That which is merely auxiliary to its main design must also fall with the principal of which it is merely an incident." Chief Justice Shaw in Warren v. Charleston, 2 Gray 84, 99, lays down the rule that if the different parts of a statute "are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them."

The language of the court in State ex rel. v. Judge, 11 Wis. 50, 55, is pertinent: "It needs no comment to show that the legislature, in passing the act of 1859, intended greatly to extend the jurisdiction of the County Court of La Crosse County, rather than abridge or destroy it. This is clear and manifest from the act itself. It is certainly improbable that the jurisdiction of the County Court of La Crosse County would have been interfered with or disturbed had not the legislature supposed they were conferring upon it increased power and authority. We therefore conclude that it was the evident intention of the legislature to repeal the provisions of the former laws, only so far as they might conflict with the act of 1859. That act being void, no other act could conflict with its provisions." The rule is concretely put in People ex rel. v. Briggs, 50 New York 553, 555, 556: "It is a universal rule that when a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void, unless the provisions are so connected together in subject matter, meaning or purpose that it cannot be presumed the legislature would have passed the one without the other;" and Beasley, C. J., in Rader v. Union Township 39 N. J. L. 509, 514, says, that the valid may be separated from the invalid part of the law when: "There is not reason to suppose that the portion thus eliminated by reason of unconstitutionality constituted an essential motive to the enactment of the law."

Light on the question may also be found in State v. Sinks, 42 O. S. 345, 350; State v. Pugh 43 O. S., 98, 118; Randolph v. Builders etc. Company, 17 S. Rep., 721; Robinson v. Bidwell, 22 Cal., 379, 387; Railroad Co., 28 Kan., 453; Commonwealth v. Hitchings, 5 Gray, 482; Fant v. Gibbs, 54 Miss., 396, 411; Ex parte Towles, 48 Tex. 413; Meshmeir v. State, 11 Ind. 482, 485; Cooley on Constitutional Limitations 178, 179; State v. Estabrook, 3 Nev. 156; People v. Kenney 96 N. Y., 294; See also the communication in 36 B. 349.

It is not pretended that the facts in these cases fit the case under discussion, but the rules of law do, and should be permitted, in a doubtful case, to furnish authority for its decision.

It is settled in Ohio that the unconstitutional part of a law may be read in connection with the other, in order to ascertain the meaning of the legislature; State v. Dombaugh, 20 O. S. 167, 174, 175. This and a perusal of the title of the act, clearly shows that its object was to amend, and not destroy, sections 3193 3194 and 3195. A conclusion permitting the act of 1894 to stand, would be in direct contravention of a clear legislative motive, purpose and object. By so doing the court, instead of effectuating the design of the legislature, as is its duty, would subvert it. I cannot think that the legislature would have repealed the laws affecting sub-contractors, except for the purpose of making their position better. The provisions of the act show conclusively that they repealed them only for that purpose. The purpose has failed. The acts sought to be repealed are still in force, and Doppes & Sons having taken the proper steps to protect themselves under the law, as it read prior to the act of 1894, are entitled to be paid the money still in Mrs. Bepler's hands, and judgment for that sum may be taken.

Louis J. and Charles E. Dolle, for Doppes & Sons.

Gorman & Thompson, for Assignee.

Stephen Coles for Mrs. Bepler.