MISSOURI, KANSAS & TEXAS RAILWAY CO. v. WADE H. WARD.

1. RAILROAD CORPORATIONS; *Right to Enter upon Lands of Others; Trespass.* In this state a corporation does not obtain a right of way for a railroad by appropriation until full compensation therefor be first made in money or secured by a deposit of money to the owner: and if it builds its road over the land of a person without first obtaining the owner's consent, or the right of way, it is a trespasser, and liable as such.

2. CONDEMNATION PROCEEDINGS; *Effect of.* A condemnation of the right of way, and a deposit of money as required by statute, after the trespasses are committed by the railway company and an action therefor is commenced, is not a bar to the prosecution of such action.

3. LICENSE; *A Question of Fact; Issue.* In this case the railway company relied on a license from the owner of the land, but on this point the evidence was conflicting and contradictory, and was properly submitted to the jury, and their finding that no license was given will not be disturbed by the court.

*Error from Bourbon District Court.*

WARD was the owner of 320 acres of land, over and across which the *Railway Company* built its railway track and operated its road. *Ward* sued the company in trespass, alleging that his land was improved, that defendant unlawfully entered upon said lands, and with divers irresponsible persons had made large cuts and ditches thereon, had cut down and destroyed the growing timber, destroyed his growing crops, and had taken possession of and held a strip of land 100 feet in width the whole length of said 360 acres. The defendant answered, first, that plaintiff had given defendant license to go upon said land and construct its railway; second, that it

had by condemnation proceedings under the statute acquired the legal right to the lands taken and appropriated, and defendant denied the committing of waste. The action was tried at the September Term 1871. The defendant asked four instructions, two of which were given. Those refused were as follows:

"3d. The county commissioners in their assessment of damages are presumed to have taken into consideration such incidental loss, inconvenience, and damages as may result from a proper construction of the road.

"4th. The condemnation of the right of way by the county commissioners of the land in question, shown by their report received and read in evidence, is regular, and from the completion of the proceedings is a full defense to all alleged trespasses from the completion of condemnation proceedings."

One of the instructions given by the court to the jury was the following:

"15th. The court further instructs you that, if you find from the evidence that the plaintiff gave the defendant permission to enter upon the land to construct its road upon certain conditions, which conditions were never complied with, and that the defendant constructed its road upon plaintiff's land before the right of way was condemned through plaintiff's land, that a condemnation of the right of way after the construction of the road was not the kind of condemnation contemplated by the statute; and unless plaintiff is shown to have assented to such condemnation in lieu of that required by law, the same is void as to the rights of the plaintiff, and the jury will find for the plaintiff. It is not presumed, if the jury find the plaintiff gave defendant leave to build the road, that he therefore did it without the compensation ordinarily to be allowed by the board of condemnation."

Other facts and questions are stated in the opinion. Verdict and judgment for the plaintiff $2,250, and the *Railway Company* brings the case here on error.

*T. C. Sears*, and *Willard Davis*, for plaintiff in error:

1. The record shows the right of way taken and occupied by plaintiff in error was duly and legally condemned by the

county commissioners. The commissioners filed their report Dec. 15th, 1870, and on the 29th of March 1871 the money for Ward and others was deposited in county treasury. No question has been raised as to the legality of the condemnation proceedings. The record shows that they are all regular, and in accordance with the statute. The condemnation proceedings and the deposit of money conferred on the company the perpetual use of so much land as was necessary for its use. The report of the commissioners shows that they not only appraised the right of way (100 feet in width,) but that they also included in their award the value of other earth used in the construction of the road over the land of Ward. Now we insist that this award, although made after the road-bed had been built, covers all damages for trespass up to the date it was made, and that it included all prospective damages resulting naturally and directly from the works of the company. 2 Barb., 199. And "the presumption is, that every injury which in judgment of law, would result to the other adjacent property of the owner, from taking a part of his land for the construction of the road, and from the use of it in a proper manner when constructed, was foreseen by the appraisers, and included in their report." 5 Sandf., 551.

2. Condemnation proceedings of land for right of way in this state are provided for by statute, and when once resorted to by the corporation it precludes the land-owner from resorting to any other remedy, and he should have taken an appeal as provided by statute; and failing to do that he cannot now recover in his action for trespass. 3 Humph., 456; 1 Smith, (Ind.,) 93. What is the legal effect of such proceedings? Is it not to cure all past trespass? Is not the compensation awarded in this way, and the money deposited a bar to an action in trespass?

3. The *affirmative* and positive testimony of the witness Ladue that he *obtained permission* from Ward for the contractors to enter on the land, before the statutory proceedings could be had, will certainly avail against the *negative* statement of Ward that he "don't recollect" giving the permission,

although he does recollect that Ladue came on his farm at time stated by Ladue, and talked to him about right-of-way.

4. The action below was tried on the theory that there was a condemnation, and Ward's counsel directed their efforts to testing the *validity* of the proceedings. The record presents the strange spectacle of a suit brought in trespass and tried upon a theory wholly foreign to that action. The fundamental error in the case was in confounding the trespass committed before the condemnation, if there was no license, with the assessment of damages on condemnation; therefore all the instructions given by the court on the assumption that this action was an appeal from the action of the commissioners is erroneous, and for this reason the judgment should be reversed.

5. The court in its 15th instruction does violence to the law. When a party commits an act under authority which would otherwise be a trespass, he is not a trespasser *ab initio,* but is only liable for the excess. This is true of an act committed under an agreement, whilst the party committing it may have failed to comply with on his part.

The court erred to the prejudice of plaintiff in error in refusing the 3d and 4th instructions asked by plaintiff in error. No. 3 contained the law applicable to "condemnation proceedings," and the report of the commissioners, if not conclusive in this case, was good and valid evidence as to the correct amount of damages. (See *St. Jos. & D. C. Rld. Co. v. Orr,* 8 Kas., 419.) No. 4 was improperly refused. The condemnation proceedings were never complained of; and we insist that they were conclusive of the rights of the parties so far as all legitimate damages are concerned.

C. O. *French,* J. D. *McCleverty,* and H. C. *McComas,* for defendant in error. (No brief on file.)

The opinion of the court was delivered by

KINGMAN, C. J.: This was an action brought by defendant in error to recover damages for trespass on real estate. The

following facts are found in the record: The plaintiff in error built its road through the land of defendant in error, without having first obtained the right-of-way. The land was entered upon early in August 1870, and the work on the road-bed commenced. Application to the county commissioners for condemnation proceedings was made October 12th thereafter. The commissioners filed their report on the 28th of November, and the money allowed by the commissioners as compensation and damages was deposited in the county treasurer's office on the 29th of March 1871. The action in this case was commenced on the 28th of September 1870, and was tried in September 1871, resulting in a verdict for defendant in error.

No right of way was obtained through the land of Ward until the money was deposited. Sec. 4, art. 12, Const. Every

1. Right of railroad corporations to enter upon lands of others.

act of the railroad company, in the way of building and operating their road through and upon the land of defendant in error before that time, was a trespass, for which he could recover. Until the payment of this money, or its deposit, as required by law, the corporation obtained no right, unless it was the right to make their survey. The proceedings to procure a condemnation of the right-of-way were not a bar to the action previously commenced, nor did it cure all past trespasses. The provision in our constitution is peculiar, and cannot be overborne by any possible necessity. It stands opposed to the construction given by courts in other states as to the effect and operation of laws providing for taking land for public purposes. Until the money is paid or deposited the corporation gets no rights. The decision of this point, which has hardly been questioned by the bar in this state, disposes of much of the argument of counsel for plaintiff in error. It was not an appeal case. The condemnation proceedings cut no figure except to fix a

2. Effect of condemnation proceedings.

time when the right-of-way became the property of the plaintiff in error; and about that, there was no controversy. It is not necessary to determine whether the condemnation proceedings were regular or otherwise. We have assumed that they were correct. The plaintiffs in error,

in the court below, relied upon a license given by Ward to them, and under which the acts complained of were done; but the fact as to whether such a license had been granted was submitted to the jury upon conflicting testimony. The jury decided that no such license had been given, and we think the preponderance of testimony sustains the verdict. From the testimony of A. P. Ladue alone, a license might be inferred, but the conversation as testified to by him is so vague as to terms, that one would infer a license from it with much hesitation, while the defendant in error positively denies the license. On this point the testimony is not negative, as it is when he says he does not recollect any such conversation as that detailed by Ladue. This conflicting testimony, with all the surrounding circumstances, went to the jury, and was by it decided. The court properly refused to give 3d and 4th instructions asked by defendant in error. They relate to the condemnation proceedings, which cut no figure in this case. For the same reason the 15th paragraph of the charge of the court could not have wrought any injury to plaintiff in error. Whether the condemnation proceedings were void or not, was of no consequence under the issues and proof in the case. That portion of the charge is obscure, and it is not necessary to say that it is a correct exposition of the law, as it could not affect the case. The judgment is affirmed.

All the Justices concurring.

3. License—
a question
of fact.