THE CENTRAL BRANCH UNION PACIFIC RAILROAD COMPANY v. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

| 28 | 453 |
| 50 | 521 |
| 28 | 453 |
| 54 | 359 |
| 28 | 453 |
| 56 | 278 |
| 28 | 453 |
| 61 | 884 |
| 28 | 453 |
| 63 | 636 |
| 28 | 453 |
| 65 | 116 |
| 65 | 585 |
| 28 | 453 |
| e67 | 214 |
| 67 | 587 |

1. STATUTE, *Partly Valid, Partly Invalid; Rule.* While it is undoubtedly true that a statute may be constitutional in one part and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statute.

2. EMINENT DOMAIN, *Power of, Inheres in Every State.* The power of eminent domain is not granted by the constitution to the legislature. It inheres in every state by virtue of its sovereignty; and the law-making body has the fullest liberty in the exercise of this power except as specially restricted by constitutional provisions.

3. EMINENT DOMAIN; *Trial by Jury.* The constitutional guaranty, that the right of trial by jury shall be inviolate, imposes no restriction on the exercise of the power of eminent domain.

4. COMPENSATION *for Land Appropriated; Appeal.* A statute which, providing for the exercise of the power of eminent domain, grants to certain commissioners the right of determining the amount of compensation to be paid for land appropriated, and makes their award final as to the amount of such compensation, infringes no constitutional guaranties; and as the legislature may make such award final without any opportunity of appeal or retrial, it may grant to the land-owner the privilege of appeal, and of further trials upon conditions.

5. RAILROAD RIGHT OF WAY; *Valid Statute.* The legislature of 1870 enacted a statute which authorized, on the application of a railroad company, the appointment of commissioners to assess damages caused by the appropriation of land for the right of way, and required the company to deposit the amount of such award with the county treasurer, subject to the order of the land-owner. It further provided that the land-owner might appeal from such award, but that such appeal should only be as to the amount of damages and should not delay the prosecution of the work; and that the railroad company, upon giving a bond conditioned for the payment of all damages which should finally be recovered, might enter upon the land and construct its road. *Held,* That such statute was valid; that the occupation by the railroad company pending the appeal was provisional only; and that the land-owner seeking to avail himself of the benefit of the appeal must take it subject to the conditions imposed by the legislature.

*Error from Atchison District Court.*

PROCEEDINGS by the *Atchison, Topeka & Santa Fé Railroad Company,* to condemn certain lands owned by the *Central Branch Union Pacific Railroad Company.* The· former company being about to enter upon these lands, the latter company applied for a temporary injunction, which the judge of the district court refused February 13, 1882. This ruling the plaintiff company brings here. The opinion contains a sufficient statement of the facts.

*Everest & Waggener,* for plaintiff in error.
*George R. Peck,* for defendant in error.

The opinion of the court was delivered by

BREWER, J: The Atchison, Topeka & Santa Fé Rld. Co., defendant in error, instituted proceedings to condemn certain lands owned by the Central Branch U. P. Rld. Co., plaintiff in error, in the county of Atchison, and to that end procured the appointment of three commissioners by the judge of the district court. These commissioners duly discharged their duty, assessed the damages, and filed their report with the county clerk on the 24th day of January, 1882. On the same day the defendant company deposited with the county treasurer of Atchison county, $3,600, the amount of damages awarded to the plaintiff company. The plaintiff company filed its undertaking for appeal from the award and assessment of said commissioners, and thereupon the defendant company executed and filed its undertaking under § 86, ch. 23, Comp. Laws 1879, to pay all damages and costs which said company might be adjudged to pay by said district court. Thereafter said defendant company being about to enter upon the land, the plaintiff company applied for a temporary injunction. After a hearing the district court refused the injunction, to reverse which ruling the plaintiff company brings the· case here.

The single question presented is, as to the constitutionality

of that part of said § 86 which authorizes a railroad company, notwithstanding the appeal, to take possession of and use the land and construct its road over the same; and its unconstitutionality is claimed on the ground that it conflicts with § 4, article 12 of the state constitution, which provides:

"No right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money or secured by a deposit of money to the owner."

It is contended on the one side, that the language of the constitution is clear and unambiguous; that its provisions are absolute and controlling; that no argument from inconvenience can make against the controlling force of those provisions; that before any land can be appropriated, the compensation therefor must be paid in money or secured by a deposit of money; that the giving of a bond is in no sense the payment of money or the deposit of money; that when the assessment is appealed from, that assessment is vacated, and there remains no determination of the compensation which is to be paid; and until the amount of that compensation is determined, it is impossible to say what amount of money should be tendered or deposited. Thus in the case at bar, though $3,600 in money was deposited with the county treasurer, no one can say that it will be finally determined that that amount is full compensation. It means that which is in fact full compensation, and not what it is conjectured may thereafter be found to be full compensation. The constitution is not satisfied by a deposit of an amount of money supposed to be large enough to cover the compensation which may thereafter be found to be full, but requires payment or deposit of an amount which is at present known and determined to be full. On the other hand, the argument is that the power of eminent domain is not granted by the constitution to the state; that it is a power which inheres in every state as one of the attributes of sovereignty; that the provisions of the constitution simply restrict the exercise of that power, and that except as restricted thereby, the power of the legis-

lature is supreme; that this power may be exercised by the state directly or delegated to a private corporation of its own creation; that the exercise of this power is not restricted by the provision that the right of trial by jury is inviolate because a jury has never been considered essential to the exercise by the state of such inherent powers of sovereignty as taxation, eminent domain and the like; that the legislature might have made the award of the commissioners final and conclusive, giving to neither the railroad company nor the land-owner any right of appeal or review, as was in fact done by the law of 1864; that as it had the discretion to withhold any appeal from the action of the commissioners, any reëxamination of the amount of assessment by a jury, it had a right to grant such a review and reëxamination upon such terms as it saw fit; and that giving the right of appeal, coupled with the privilege to the railroad company of taking possession *ad interim*, was a mere act of favor to the land owner, and not the enforcement of a constitutionally guaranteed right. Further, it is contended that if this privilege of entry pending the appeal is unconstitutional, then the whole matter of appeal must fall, because it is evident that such temporary possession was in the thought of the legislature a condition of and an inducement to the giving of the appeal; that the land-owner may not claim the privilege of appeal and at the same time repudiate the conditions upon which the legislature has given it to him.

This question has been argued before us with an ability and zeal worthy of its importance. On the one hand, we have been urged to uphold this constitutional guaranty in its letter and spirit, in order that the land-owner may be fully protected against the eagerness and greed of railroad corporations. And on the other hand, it has been pointed out that to sustain the views of the plaintiff would put it in the power of a single obstinate land-owner to long delay the building of any railroad. We are fully sensible of the importance of the question, and have given it the most careful considera-

tion. It is obvious that the question is not free from diffi-
culty. At the present time there are pending before us two
cases involving the same questions, coming from two of the
most learned, able and distinguished district judges of the
state, upon which question they are divided — one sustaining
the views of the present plaintiff in error, and the other the
reverse. The question is for the first time presented in this
court; for while many cases involving the condemnation of
the right of way have been before us, and while this ques-
tion has been many times suggested to our minds, we have
never been called upon to decide it, and have carefully re-
frained from expressing any opinion thereon. And now we
remark in the first place, that while it is undoubtedly true
that a statute may be constitutional in part and

1. Statute, partly
   valid, partly
   invalid; rule.

unconstitutional in part, yet as a general propo-
sition it has its limitations. The mere fact that
the one part standing alone would be within the scope of the
legislative power, does not prove that it can be upheld when
coupled with other matter. If such other matter conflicts
with the constitution and must fall, then the constitutionality
of the first depends upon the extent and closeness of its con-
nection with the second. If the first be conditioned upon
the second, or if it is apparent that the legislature would not
have enacted the first but for the second, that the latter was
as it were an inducement to the former, and that only by
virtue of a concurrence of the two would it be presumed that
in the judgment of the law-making power the respective
rights of antagonistic parties would be preserved, then with
the fall of the second falls also the first. It is not enough
to say that the legislature might have legally enacted the
first alone. When it has coupled the two together the fail-
ure of the latter invalidates the former; and this for the
reason that because of the mutuality of the two, the relation
*inter sese,* the dependence of the one upon the other, the cor-
respondence of blessing and burden, it must be presumed
that the one was an inducement to or a condition of the

other; that the legislature would not have enacted one but for the other. As Cooley, in his work on Constitutional Limitations, says, page 179:

"And if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them."

This doctrine is fully sustained by all the authorities. In the case of *Warren, et al., v. The Mayor, &c.*, 2 Gray, 84, Chief Justice Shaw, speaking for the supreme court of Massachusetts, thus states the rule:

"It is no doubt true, as has been argued by the learned counsel for the prosecutors of this writ, that the same act of legislation may be unconstitutional in some of its provisions and yet constitutional in others. It was so decided in the case of *Fisher v. McGirr*, just cited, in which it was held that all that part of the act of 1852, respecting the manufacture and sale of spirituous liquors, which authorized a seizure of liquors on the terms and in the manner there provided, was unconstitutional; and yet we are every term rendering judgments against persons for selling spirituous liquors contrary to other provisions of the same statute. There is no inconsistency in this. Such act has all the forms of law, and has been passed and sanctioned by the duly-constituted legislative department of the government; and if any part is unconstitutional, it is because it is not within the scope of the legitimate legislative authority to pass it. Yet other parts of the same act may not be obnoxious to the same objection, and therefore have the full force of law, in the same manner as if these several enactments had been made by different statutes. But this must be taken with this limitation, that the parts so held respectively constitutional and unconstitutional must be wholly independent of each other. But if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect, the legislature would not pass the residue independently, and some parts

are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them."

See also *Slauson v. The City of Racine*, 13 Wis. 398, in which Judge Paine thus discusses the question:

"It is undoubtedly true that parts of a statute may be unconstitutional, and yet other parts, capable of being executed independently, held valid. But the counsel for the plaintiff contends that where parts of a statute are unconstitutional and other parts valid, the former being evidently designed as compensation for or inducements to the latter, so that the whole taken together warrants the belief that the legislature would not have passed the valid parts alone, then the whole act should be held inoperative. This position is fully sustained by the case of *Warren, et al., v. Charlestown*, 2 Gray, 84, and it seems to us to rest upon solid reasons. We think also it is fairly applicable to this case.

"The first section of the act [ch. 83, Pr. Laws of 1856] provides that the tracts in question shall be annexed to the city. The second defines the new boundaries of the city, and then follows a proviso that the farming and agricultural lands annexed should be exempt from certain taxes, and should be taxed for city and ward purposes only, at the rate of one-half of one per cent. There is no doubt that in many instances, by the annexation of farming lands to a city, hardships are inflicted upon their owners by the increased rates of taxation to which they are subjected. If they are annexed, they must be taxed as other lands in the city; and that is a matter proper to be considered by the legislature in determining whether they shall be annexed. In this act it is evident the legislature had it under consideration, and that they annexed these lands with the idea that they might protect them against such hardships by a proviso for a less rate of taxation. The proviso was clearly intended as a compensation for the annexation, and stronger language could not well be selected to show that the legislature intended the one to be subject to the condition stated in the other, and that they would not have annexed these lands unless they had supposed that effect could be given to the proviso. For these reasons, we think the principle stated applies and the act should be held inoperative."

See further the case of *Meshmeier v. The State*, 11 Ind. 482, in which the court says:

"The legislature pass an entire statute on the supposition,

of course, that it is all valid and to take effect. The courts find some of its essential elements in conflict with the constitution, strip it of those elements, and leave the remaining portion mutilated and transformed into a different thing from what it was when it left the hands of the legislature. The statute thus emasculated is not the creature of the legislature, and it would be an act of legislation on the part of the courts to put it in force. The courts have no right thus to usurp the province of the legislature."

In *Lathrop v. Mills*, 19 Cal. 529, Judge Baldwin uses this language:

"In order to sustain the excepted clause, we must intend that the legislature, knowing that the other provisions of the statute would fall, still willed that this particular section should stand as the law of the land."

See also *Reed v. Omnibus Rld. Co.*, 33 Cal. 212; *Campau v. The City of Detroit*, 14 Mich. 275; *State v. Wheeler*, 25 Conn. 290; *State, ex rel., &c., v. Dousman*, 28 Wis. 541. It may also be added that we need never expect to find the connection or dependence expressed in the statute. The legislature never enacts laws upon the supposition that one part of them is in conflict with the constitution and must fail; it always proceeds upon the supposition that all that it does is within its constitutional power. Hence it never in terms says that if one portion of its statute fails the other portion must also fail, nor that it rests one part upon the supposed validity of another part. It legislates as if all that it attempts to do was within its constitutional power; and when in pursuance of its constitutional duty the court ascertains that one part of its legislation conflicts with the constitution and must fail, the inquiry is, not whether the balance of the statute is said by the legislature to depend and rest upon the unconstitutional part, but whether in the nature of things and by reason of the evident interdependence of the two, one upon the other, the courts can fairly say that the legislature intended the two to stand together as a single entity, the one dependent upon the other, or the one an inducement or compensation for the other, or the two together making a single

compact and harmonious whole; and whenever that appears, then the unconstitutionality of either invalidates both.

With this statement of the rules by which the validity of statutes is to be determined, we pass to the consideration of the statute in question; and here it will be noticed that the statute of 1864 made the award of the commissioners final. When that award was made and the amount of the compensation by them determined paid or deposited, the right of the railway company was complete, and the land-owner was powerless to challenge the occupation by the company. For reasons heretofore suggested, (the exercise of the right of eminent domain not being conditioned upon a jury trial,) the legislature had the power to make the full exercise of the right of eminent domain close with the action of the commissioners. Under that statute no appeal was allowed, and upon the payment or deposit of the award of the commissioners by the railway company, its right of occupation became unchallenged. The law of 1868 changes the law of 1864 so far as to allow an appeal from the decision of the county board as to the value of the land appropriated. The law of 1870, which is the law under which these proceedings were had, provided for an appeal, but limited the scope and effect of the appeal as follows:

3. Eminent domain; trial by jury.

"And an appeal shall be had from the determination of the board of county commissioners as to the value of the land, crops, buildings and other improvements on said land, and for all other damages sustained by such person or persons by reason of such right of way so appropriated, in the same manner as appeals are granted from the judgment of a justice of the peace to the district court; and said appeal and all subsequent proceedings shall only affect the amount of compensation to be allowed, but shall not delay the prosecution of the work on said railroad, upon said company paying or depositing the amount so assessed by said commissioners with the county treasurer of the county within which the said lands are situated; and upon the payment or deposit, as aforesaid, of the amount so assessed by said commissioners, and upon said company executing a bond with sufficient security, to be approved by the county clerk,

to pay all damages and cost which said company may be adjudged to pay by said district court, said company may, notwithstanding said appeal, take possession of and use the said land and construct its road over the same."

Now it is obvious from this statute that the legislature never intended that an appeal from the assessment of damages should work any delay in the occupation of the land, or the construction of the road by the railroad company. Language could not be used which more clearly indicates the intention and thought of the legislature. "Said appeal and all subsequent proceedings shall only affect the amount of compensation to be allowed, but shall not delay the prosecution of the work on said railroad." Could language make clearer the intent of the legislature? Would it not practically nullify that intent to uphold the appeal, and at the same time make the appeal operative to delay the occupation of the land and the construction of the railroad? Was not the railroad company equally with the land-owner within the thought of the legislature, and the intended protection of this statute? And may the courts wipe out all of benefit and advantage to the one, and at the same time sustain the benefit and protection to the other? Beyond the letter of the statute we must also consider the ordinary facts of railroad building. Railroads are not initiated and railroad enterprises undertaken with the large sums of money needed therefor secured, except upon the idea that such roads shall speedily and without interruption be pushed to completion. In many counties of the state, district courts are held but twice a year. Can it be that the legislature intended that all railroad enterprise in such counties should wait the tardy processes of appeal, continuances, and trials in the district courts? Can it be supposed that the legislature would expect the investment of money in railroad enterprises, with such certainties of delay, or the equivalent of submission to the exorbitant demands of any unprincipled and obstinate land-owner? Is it not more consonant with fair dealing, and the presumption of honesty on the part of the legislature, that it coupled with protection

to the land-owner the rapid consummation of any intended railroad enterprise? Having regard to both the letter of the statute and the ordinary facts of railroad building, we cannot conclude otherwise than that the legislature intended that the appeal of the land-owner should be conditioned, and dependent upon the present occupation of the land by the railroad company, and the immediate completion of the railroad enterprise. Hence within the principles so clearly and forcibly shown by the authorities heretofore cited, we are forced to the conclusion that the legislature based the appeal upon the condition of the present occupation by the railroad of the land, and that if such present occupation must fail by virtue of any constitutional inhibition, then the appeal must fall, and the award of the commissioners must stand as the final arbitration and determination of the amount to be paid for the land appropriated.

4. Compensation for land appropriated; appeal.

This conclusion would necessitate an upholding of the ruling of the district court, and a judgment against the plaintiff in error. But we are not content to rest the decision of this case upon this possibility of denying the validity of the appeal, and so we pass to the consideration of the other question presented by counsel, and upon that we are forced to sustain the statute as a whole.

We premise here, that the right of eminent domain carries with it no constitutional guaranty of a jury trial; it is a power which may be exercised whenever the necessities of the public require, and in such manner and through such machinery as the legislature may see fit to prescribe, the only limitations thereon being the constitutional restrictions as to the time, kind and amount of compensation. The legislature may provide for a jury trial of the damages in the first instance, or it may withhold such a trial altogether and leave to any commissioners or court the sole and final determination as to the amount of damages. In Cooley's Constitutional Limitations, page 563, the author says:

"What the tribunal shall be which is to assess the compensation, must be determined by the constitution or by the

statute which provides for the appropriation. The case is not one where as a matter of right the party is entitled to a trial by jury, unless the constitution has provided that tribunal for the purpose."

See also Mills on Eminent Domain, §§ 84, 91; *Plank Road Co. v. Pickett,* 25 Mo. 535; *Ross v. Comm'rs, &c.,* 16 Kas. 411.

The law of 1864, heretofore cited, was an exercise of this power, for by it the legislature made the award of the commissioners final, gave no right of appeal, and provided for an appropriation of the right of way upon the payment or deposit of their award. Now if the legislature violates no constitutional provision in making the award of the commissioners final, if the land-owner has no constitutional right to an appeal from such an award, it would seem to follow necessarily that that which the legislature may withhold altogether it may grant upon conditions. The appeal being a matter of favor and not a matter of right, the power that grants it may prescribe the terms upon which it shall be taken. How can it be held that a land-owner who has no right to an appeal can, when one is tendered to him upon conditions, accept the tender and repudiate the conditions? Can he of his own volition enlarge the scope of a grant, which is a mere matter of legislative favor? Many words cannot make this clearer; the land-owner's constitutional guaranty terminates with the award of the commissioners. The appeal is a favor, and carries with it all the conditions the legislature has seen fit to impose. An examination of the statute leaves no doubt as to the extent of these conditions; it provides that the appeal shall only be as to the amount of damages, and that it shall not delay the prosecution of the work. But we are met here with the objection that the appeal sets aside the award of the commissioners; that there then exists no adjudication of the amount of compensation; that upon the trial of the appeal it not infrequently happens that the jury award a much higher sum than the commissioners; and that if the railroad company be already in possession of the land, having constructed its road over it, it may result that the railroad appropriates

the land without prior payment or deposit of the compensation. To that we reply, that the land-owner is under no obligations to appeal. His compensation has been determined by a competent and constitutional tribunal, and the amount of that compensation is paid or deposited for him, and hence he has no right to complain if of his own volition he initiates further proceedings. Secondly, the occupation of land by the railroad, pending the appeal, is provisional merely; its entry is not a permanent appropriation of the right of way, and it acquires by such entry no vested rights. It takes upon itself all the risks of the final award by the jury on the appeal. If the verdict of the jury and the judgment of the court exceed the award of the commissioners, the railroad company must promptly pay such increased amount or the land-owner may maintain ejectment. ( *Railroad Co. v. Callender,* 13 Kas. 496.) Such provisional occupation by the railroad company is not an anomalous proceeding. A railroad company may by statute, (Comp. Laws 1879, ch. 23, § 47,) enter by its officers and agents upon the lands of any person for the purpose of examination and survey of its proposed route; in other words, in its behalf the law of trespass is temporarily suspended, or at least limited in its operation. It is true, this is but a trivial matter compared with the actual occupation of the land, and yet it is kindred in principle. Again, in replevin actions the claimant by giving a bond may obtain possession of the property pending a litigation, and this notwithstanding the fact that the final judgment may show that he never had any right thereto. Still again, in many proceedings the court takes possession of the property in dispute and places it in the hands of a receiver. All these possessions, entries and occupations are simply provisional; and while doubtless under cover of them the legislature may not defeat the land-owner's constitutional guaranty of compensation, yet when that guaranty has once been secured to him, he may not question the validity of subsequent provisional proceedings. Our conclusion therefore is, that so far as any ques-

5. Railroad right of way; valid statute.

30 — 28 KAS.

tion in the present case is involved, the statute as a whole is valid and must be sustained.

Before closing this opinion it may be proper to notice the various cases decided by this court which counsel seem to think conflict with this decision, or the opinions which at least are thought to contain language inconsistent with the views herein expressed. The first case is that of the *Railroad Company v. Weaver*, 10 Kas. 344. That was an action for damages, begun in a justice's court on the ground that the railroad company had constructed its road over the plaintiff's land and paid no damages therefor. The defense was that the land-owner's only remedy was a proceeding under the statute to have his damages assessed. We decided against this claim, holding that the railroad company under the constitution acquired no rights until after it had initiated proceedings, and paid or deposited the amount of the compensation awarded, and that in the absence of such proceedings and such payment or deposit, the land-owner had all legal remedies against the company, as against any other trespasser, and was not limited to the statutory proceeding for the assessment of damages. The next case is that of the *Rld. Co. v. Ward*, 10 Kas. 352, in which the railroad company sought to defend an action of trespass brought against it by evidence of condemnation proceedings subsequent to the trespass, and we held that such condemnation proceedings did not relate backward or cure trespasses committed before they were had ; that until the compensation-money is paid or deposited, the railroad company acquires no rights, and is liable for any trespass committed theretofore. Nothing in the language of the court in either of these cases touches upon the validity of this section of the statute. It is true the language referring to the constitutional provision is emphatic and decided, and we reiterate the same language here. Compensation in money, or by a deposit of money, must be made before the railroad company acquires any rights in the land. The next case is that of the *Rld. Co. v. Callender*, 13 Kas. 496. In that case it appeared that after the award of the commissioners the

land-owner appealed, and on the trial in the district court recovered a much larger compensation than that given by the commissioners. Pending the appeal the railroad. company having deposited the amount of the award, but without giving the bond required by the statute, entered upon the land and constructed its road. After the recovery of judgment in the district court the amount thereof not being paid, Callender, having waited eight months, commenced his action of ejectment, and we held that such action could be maintained. In that case even the provisional occupation by the railroad company was not authorized by statute, the company having failed to execute the bond required as a condition precedent thereto. The validity of this section was not passed upon. It was assumed to be valid. The fact that the railroad company had not complied with its terms was noticed, and hence it was called a trespasser *ab initio*. We did not then think that even if the company had given the bond the judgment should have been otherwise than it was, nor do we think so now. If, after the final adjudication of the amount of compensation, the railroad company fails promptly to pay the amount thereof, the provisional occupation ceases to be rightful, and the land-owner may recover the possession of the land, as well as all damages for the injuries done thereto. The next case is that of *Blackshire v. The Rld. Co.*, 13 Kas. 514. In that case the land-owner appealed, and recovered a larger amount in the district court than had been awarded by the commissioners. The railroad company had deposited that amount with the county treasurer. Pending the appeal the treasurer defaulted, and the railroad company sought to have the amount deposited with him credited upon the judgment in the district court, claiming that the money while in the hands of the county treasurer was at the risk of the land-owner. We dissented from this claim, and held that it remained there at the risk of the railroad company. Considerable stress has been laid upon this case, as though the argument made by the court in its opinion in support of the conclusion there reached, committed it to different views of

the question now before us than we have here expressed; but the scope of the argument made in that case will be better understood, when we bear in mind the claim of the railroad company. It was substantially, that when the company had deposited the amount of the commissioners' award, the money became the money of the land-owner and the land the property of the railroad company. And the company also claimed that whatever further proceedings might be authorized, the title to neither land nor money was affected thereby, and hence that the money while it remained in the hands of the county treasurer, so remained at the risk of the landowner. In the opinion we endeavored to show that there was no final appropriation of the land, and that the title did not pass until the full amount finally adjudicated to be the compensation was paid or deposited; that the appeal, like the appeal from the judgment of a justice, vacated the award, and left pending no adjudication upon which the company could base title. We shall not restate the argument then made; we have reviewed the question, and notwithstanding the argument of the counsel for defendant in error, we think the argument then made is sound, and the conclusion reached in that case correct. We think now as then, that there is no final appropriation of the right of way until that compensation, which as a final result of all litigation by appeal, error or otherwise is adjudged to be full and complete, is paid. Up to that time all occupation which may be permitted is merely provisional. Yet, while the title to the right of way does not finally pass till the end of the litigation, still the constitutional guaranty is satisfied when the award of the commissioners is made and deposited. The railroad company may not question the land-owner's right of appeal, because the legislature has the power to give it. If the land-owner does not appeal at the end of ten days, the title to the land and the money are respectively transferred; but if he does appeal, and avail himself of the privileges granted by the legislature, he takes them *cum onere*. See also as to the matter of appeal, the case of the *Rld. Co. v. Hammond,* 25 Kas. 208. This

same idea of no final appropriation of the right of way — no absolute transfer of title until the end of all litigation as to the amount of compensation — is recognized in the case of the *Rld. Co. v. Wilder*, 17 Kas. 239. The last case referred to is that of the *City of Kansas v. Rld. Co.*, 18 Kas. 334. That was a case in which the city of Kansas attempted to open a street, and condemn land therefor. The statute referred to authorized an appeal from the award of the householders, but nowhere authorized any possession of the land sought to be condemned pending the appeal. Hence we held, and we think very correctly, that pending such appeal, as the statute gave no right of temporary occupation, the city had none. These are all the cases to which we have been referred by counsel in which any expression or conclusion is thought to appear antagonistic to the views expressed in this case. We see nothing that conflicts, and we certainly intended in those various cases to avoid any decision of the question now presented. Authorities upon this question cannot be expected directly in point, in view of the difference between our constitution and those of other states; and yet there are one or two authorities which deserve to be cited. See the case of *Peterson v. Ferreby*, 30 Iowa, 327, in which the court uses this language:

"The views herein expressed are not in conflict with the constitution, which provides that 'private property shall not be taken for public use without just compensation first being made, or secured to be made, to the owner thereof, as soon as the damages shall be assessed by a jury.' (Const., art. 1, § 18.) The property is not taken in an absolute sense, until the amount assessed upon appeal is paid. If the appellate jury in this case shall assess less than the sheriff's jury have assessed, the amount is secured to plaintiff, being in the sheriff's hands; if they shall assess more, the plaintiff can, by injunction, prevent the absolute appropriation of his property until the increased sum is paid." (*Richardson v. Des Moines Valley Rld. Co.*, 18 Iowa, 260.)

"In either event the land-owner is fully protected. We are clearly of the opinion that the money paid the sheriff should remain a deposit in his hands until the damages are

finally assessed in the appellate court. The demurrer to the answer of defendant was improperly sustained."

See also the case of *Doughty v. Rld. Co.*, 1 Zab. (N. J.) 442, in which Randolph, Judge, says:

"But if the legislature have a right to say that a tender of the amount found by a jury shall be considered compensation, they must also have the right to say that a tender of the amount awarded by the commissioners will have the same effect, and the additional trial allowed cannot render that unconstitutional which before was constitutional."

We have given this question the fullest consideration, and our conclusion upholds the validity of this statute. We think the constitutional guaranty has been satisfied by it both in letter and spirit; that the rights of the land-owner are protected, and at the same time no unreasonable obstruction placed in the way of railroad enterprises. It follows, therefore, that the judgment of the district court was correct, and must be affirmed; and it is so ordered.

All the Justices concurring.