## THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. J. B. WATKINS.

1. RAILWAY COMPANY, *Directing Trespass — Liability.* Where a railway company directs and procures a trespass to be committed by a contractor and his employés constructing its road-bed, it is liable with those who committed it.

2. CONDEMNATION-MONEY — *No Deposit — Right to Make Survey.* Until the payment of the condemnation-money or its deposit as required by law, a railway corporation obtains no right to the land attempted to be appropriated, excepting a right to make a survey.

3. MEASURE OF DAMAGES — *Instruction Given, Not Erroneous.* Where a party in a civil action tried before a jury requests the court to instruct as to the measure of damages, and the court gives the instruction prayed for, and the jury in their special findings show that

the verdict against the defendant embraces only such damages as are included in the instruction requested, *held,* that such party cannot complain that the instruction is erroneous.

4. TREBLE DAMAGES, *Jury to Assess.* Where treble damages are recoverable in the district court in a civil action under the trespass act, they ought to be assessed by the jury under proper instructions from the court.

*Error from Lincoln District Court.*

ON the 11th day of August, 1887, *J. B. Watkins* commenced his action against the *Chicago, Kansas & Western Railroad Company,* and alleged in his petition:

"That the said defendant is now and at the times hereinafter mentioned was a corporation duly organized and existing under and by virtue of the laws of the state of Kansas; that said plaintiff is now and for more than one year last past has been the owner in fee and in the possession of the premises described as follows, to wit: The west half of section No. three, town No. 10, range No. 8, in Lincoln county, Kansas, containing 320 acres more or less; that said land is improved and tillable, and is used and occupied as a single tract for agricultural and stock purposes; that on or about the first of June, 1887, and at various times subsequent thereto, and prior to the commencement of this action, the said defendant, with divers irresponsible persons in its employ, unlawfully and with force broke into and entered upon the premises of plaintiff as above described, and then and there broke down the fences then being on said premises, and with horses, wagons and scrapers entered upon said premises, and trod down the grass, and cut and destroyed and converted to its own use the corn then and there growing on said premises, all to plaintiff's damages in the sum of $50, and for which plaintiff asks treble damages; and then and there cut down and destroyed on said premises a grove of one hundred ash trees, of the value of $500, and carried away and converted the same to its own use, for which plaintiff asks treble damages; and then and there made an excavation across said premises two hundred feet in width, removing the soil, clay and stones from about ten acres of land, and converted the same to their own use, to plaintiff's damages in the sum of $500, for which plaintiff asks treble damages; and then and there constructed across the south half of said premises a fill or grade of dirt and stone about eight feet in height above the level of the surrounding land,

with deep cuts and ditches on either side thereof; that plaintiff's residence and farm buildings have been and are cut off by cuts and ditches and embankments from the greater portion of said premises, and that he has been damaged by the construction thereof in the sum of $1,000; that said defendant wrongfully entered upon said premises as aforesaid, without the knowledge or consent of this plaintiff, and without having taken any steps by condemnation or other legal proceedings to appropriate or acquire any rights to any part of said premises.

"Wherefore, plaintiff asks judgment against said defendant in the sum of $4,600, and for costs of this action."

Subsequently the defendant filed an amended answer, alleging that—

"For a first defense to the alleged cause of action contained in said petition, that said defendant denies each and every allegation and averment contained in said petition, and each and every part thereof.

"For a second defense to said alleged cause of action, said defendant says: That said defendant now is, and has been during the time for more than one year last past, a railway corporation duly chartered and organized under and by virtue of the laws of the state of Kansas, and defendant was so chartered and organized for the purpose of constructing and operating railroads in said state; that during the months of January and February of this year, said defendant surveyed and located a route for one of its proposed railroads through the counties of Chase, Morris, Dickinson, Ottawa, and Lincoln, in said state, and that said route passed over and across a part of the lands described in said petition; that on or about the 12th day of February, 1887, the Honorable S. O. Hinds, judge of the above-named court, upon an application duly made to him by the defendant, appointed three commissioners, each a resident and freeholder of said county of Lincoln, to lay off said route, side-tracks, etc., through such county, and of such width and upon such location as might be desired by said defendant, having the same carefully surveyed and ascertaining carefully the quantity of land necessary for such proposed route, side-tracks, etc., out of each quarter-section, or rather, tract of land through which said route, side-tracks, etc., were located, and appraise the value of the portion taken out of each quarter-section or other lot of land, and assess the damages to the remainder thereof; that on the 17th day of

February, 1887, said commissioners were duly sworn to honestly and faithfully discharge their duties as such commissioners; that said application for the appointment of said commissioners, their appointment and oath of office, were duly made and taken under article 9 of chapter 23 of the Compiled Laws of Kansas; that before having said commissioners proceed with their work in condemning said route through said county of Lincoln, said defendant desired to purchase as much as possible of the right-of-way along said route, and for that purpose employed men to negotiate with and purchase said right-of-way from the owners and those interested in the real estate along said route; that said defendant and the men employed by it as aforesaid, during the month of July, 1887, negotiated with said plaintiff for the purchase of the right-of-way for its said proposed railroad through the lands described in said petition, and as a result of such negotiations, said plaintiff and defendant agreed upon the amount of compensation that plaintiff should receive of defendant for said right-of-way through said lands, on account of said plaintiff's interest therein, and said plaintiff then contracted with said defendant to permit defendant to retain its road-bed and right-of-way over said lands and along said route, and to receive said compensation in full payment for plaintiff's interest in the value of said lands so taken and the damages to the remainder thereof; and that said negotiations, agreement and contract were had and made after work was done on the grading of said road-bed on said route through said lands; that said agreement was verbal; that whatever part of said lands has been injured or appropriated by defendant, such appropriation and injury have been occasioned by the construction and grading of said road-bed on said route, and such construction and grading were ratified by plaintiff under said agreement and contract; that on or about the 4th day of August, 1887, said commissioners performed their duties and filed their report in the office of the county clerk of said county, and defendant did not have said commissioners condemn said right-of-way through said lands, for the reason that it relied upon said contract and agreement and the performance thereof by the parties thereto, but defendant has fully completed the condemnation proceedings embraced in said report, and has paid the amounts of damages therein awarded; that during said year, and before the defendant had constructed any part of its road-bed for said railroad in said county of Lincoln, it made a map and profile of said route through said county, and

filed the same in the office of the county clerk of said county. Wherefore, said defendant prays judgment for costs herein."

To this answer the plaintiff filed a general denial. Trial had at the November term of the court for 1887, before the court with a jury. The jury returned a verdict for the plaintiff, and assessed his damages at $345.50. They also returned the following special findings of fact:

"Q. Did the defendant cut any timber on the premises of plaintiff, without his consent? A. Yes.

"Q. If you answer the previous question in the affirmative, what was the value of that timber to those premises? A. $15.

"Q. Did the defendant, through its contractors, enter upon the premises of plaintiff without his consent and dig up any clay or loam? A. Yes.

"Q. If you answer the last question in the affirmative, state how much such clay or loam was worth. A. $30 per acre.

"Q. Does it appear from the evidence that the damage in controversy herein to the lands described in plaintiff's petition, to wit, the west half of section three, in township ten, range eight west, in Lincoln county, Kansas, was occasioned in the construction by defendant of its railroad described in its amended petition? A. Yes.

"Q. Did the said defendant, in the construction of its said railroad through said lands, damage any of the improvements thereon? If so, describe such improvements, and state the amount of damage to each of such improvements. A. ——.

"Q. Did the defendant, in the construction of its said railroad through said lands, injure any of the fences thereon? If so, what was the actual damage to the fences so injured, at the time they were so injured? A. Yes; no evidence as to the amount of damages.

"Q. Did the defendant in the construction of its railroad through said lands, destroy any of the fences thereon? If so, what was the actual value of the fences at the time they were so destroyed? A. Yes; no evidence as to the amount of damages.

"Q. Did the defendant, in the construction of its said railroad through said lands, tread down any of plaintiff's grass then growing upon said lands? If so, what was the actual value of said grass at the time it was trodden down? A. Yes; $0.50.

" Q. Did the said defendant, in the construction of its said railroad through said lands, cut and destroy any corn owned by the plaintiff and growing thereon ? If so, what was the actual value of the corn at the time it was so cut and destroyed ? A. No.

" Q. Did the defendant, in the construction of its said railroad, cut down, destroy, carry away, and convert to its own use any of the ash and other trees then growing on said lands ? If so, what was the actual value of said trees at the time they were so cut down, destroyed, carried away, and converted to said defendant's use ? A. Yes; $15.

" Q. How many acres of land did the defendant take and appropriate in the construction of its railroad through said lands ? A. About five acres.

" Q. In the construction by the defendant of its said railroad through said lands, from how many acres of such land did it actually remove the soil, clay, or stone ? A. About two acres.

" Q. Did the defendant, in the construction of its railroad bed for said railroad through said lands, remove off from the entire tract any of the soil, clay or stone of which said lands were composed ? A. No.

" Q. How many cubic yards of earth are there in said road-bed of the defendants on said land ? A. 4,500.

" Q. What is it worth per cubic yard to remove the earth composing said road-bed on said lands, back to the ditches from which it was taken in the making of said road-bed ? A. 7 cents per cubic yard.

" Q. Do you in your general verdict allow the plaintiff any damages to said land by reason of the construction of said road-bed for said railroad thereon, except the cost of removing said road-bed back to the ditches from which it was taken ? If so, how much ? A. Yes; $30.50.

" Q. If the last question is answered in the affirmative, then the jury will answer the following questions: For what injury to said lands is the amount of damages set forth in the last answer above allowed ? A. Trees, $15; damages to cultivated land, $15; grass, 50 cents.

" Q. Did the defendant, in the construction of its said road-bed for said railroad, remove any of the clay on said land ? If so, how many yards of clay were so removed ? A. 50 yards.

" Q. What was the actual value of the clay so removed, at the time of such removal, in the construction by said defend-

ant of its said road-bed for said railroad on said lands? A. $30 per acre.

"Q. Did the defendant, in the construction of its said road-bed for said railroad, remove any of the stone on said land? If so, how many cubic yards of stone were so removed? A. No.

"Q. What was the actual value of the stone so removed, at the time of such removal, in the construction by defendant of its said road-bed for said railroad on said lands? A. Nothing.

"Q. In the construction by the defendant of its said road-bed for its said railroad, through said land, how many feet of land did it appropriate on each side of the center line of said road-bed? A. 45 feet.

"Q. Has the defendant laid any ties or iron on its said road-bed on said land? A. No.

"Q. How many acres of land are there included in the ditches made by said defendant in the construction of its said road-bed on said lands? A. About two acres.

"Q. How many acres of land are there included in the inner lines of said ditches on said lands? A. Three acres, or thereabout."

The court rendered judgment for $376.50, increasing the amount of the judgment by giving treble damages for the trees and grass in controversy. The railroad company filed its motion for a new trial, which was overruled. It excepted, and brings the case here.

*George R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*W. J. Patterson,* and *M. Summerfield,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by J. B. Watkins against the Chicago, Kansas & Western Railroad Company, to recover damages for trespass on real estate, committed in July, 1887. The land was owned by Watkins, but at the time of the trespass Monroe Smith was in the actual possession of the land, and entitled to the crops as tenant. It is claimed by the railway company that it is not responsible for the trespass, it having shown that the grade, the cutting

down of trees, etc., was done by contractors having charge of the construction of its road.   It appears, however, from the evidence and the admissions of the railway company upon the trial, that the contractors were set to work by the agents of the company to clear the right-of-way and construct its road-bed; therefore it is liable, as it caused and directed the work.   Whether the ax be used by himself, by his employé, his vendee, or one occupying no contract relation to him, is immaterial, for he cuts the trees who causes them to be cut. ( *Welsh v. Cooper*, 8 Pa. St. 217; *Fox v. Northern Liberties*, 3 Watts & S. 103.)   In the latter case it was said that a municipal corporation could become a trespasser by previously authorizing or subsequently ratifying the trespass of its officer..   It is an elementary rule that he who procures a trespass to be committed is liable with those who committed it, and it has been often recognized in our cases.   There is no hardship involved in the application of the rule to this case, for in good conscience the corporation should bear the consequences of an act which it caused or procured to be done.   The contractors and the laborers who cleared off the right-of-way, cut down the trees, and constructed the grade, had no interest in the matter beyond the pay for their work, and they did what the railway company directed.

1. Railway company, directing trespass—liability.

.This case is wholly different from *Railway Co. v. Fitzsimmons*, 18 Kas. 34.   In that case the contractors had sole control of the turn-table, which they negligently left without guard or lock.   The railway company was not responsible for the negligence of the contractors, because in no way. a party to it.

It is next claimed that the jury was not properly instructed as to the measure of damages, and that it was error to instruct the jury to consider the difference in value of the land before and after the grade.   As the case is now presented, it is unnecessary to decide the particular question argued in the brief of the railroad company, as to what damage is allowable in an action of trespass, where it appears upon the trial there is

a permanent injury or a permanent use. The railroad company in this case relied upon a license or contract given by Watkins, under which the acts complained of were done; but the fact whether there was such a contract was submitted to the jury upon conflicting testimony, and the jury found against the company. The verdict disposes of that question.

There was no showing upon the trial that any right-of-way was obtained through the land by a deposit of condemnation-money. Until the money is paid or deposited, the company obtains no right to the land condemned, unless it is the right to make its survey. It was not shown upon the trial that any ties or rails had been laid upon the right-of-way, or that any railroad was in operation; therefore the condemnation proceedings cut no figure in the case. (*M. K. & T. Rly. Co. v. Ward*, 10 Kas. 352.) In that case it was said:

2. Condemnation-money— no deposit— right to make survey.

"In this state a corporation does not obtain a right-of-way for a railroad by appropriation until full compensation therefor be first made in money, or secured by a deposit of money, to the owner; and if it builds its road over the land of a person without first obtaining the owner's consent or the right-of-way, it is a trespasser, and liable as such."

Again, the railway company asked the court to instruct the jury:

"If you find from the evidence that the defendant did, about the time set forth in the petition, and before the commencement of this action, enter upon the premises of plaintiff and construct a grade thereon, then the plaintiff is entitled as his damages in this action against the defendant for the erection of such grades the amount that it will actually cost to remove the grade back to the ditches from which it was taken, together with any other damages that may accrue to the land comprising the ditches and included within them."

The court charged substantially as requested; and while it also charged the jury to take into consideration the difference between the value of the land before and after the grade was constructed, the jury by their special findings limited the damages (with a single ex-

3. Measure of damages— instruction given, not erroneous.

ception, to be noted hereafter) within the instruction prayed for. They found there were 4,500 yards of earth in the grade or embankment, and that it would be worth seven cents per yard to level it down, making $315.; they found the value of the trees destroyed to be $15; the damage to the cultivated land by the grade $15, and damage to grass 50 cents, making the verdict $345.50.

The trial court trebled the damages for the trees and grass, and rendered judgment for $376.50. The damage to the grass of 50 cents and the treble damages allowed cannot be sustained. Monroe Smith was the tenant in the actual possession of the land, and he is the person entitled to recover damages, if any, for the crops, including growing grass. (3 Sutherland on Damages, p. 365; *Arn v. Matthews,* 39 Kas. 272.) It appears from the testimony that Smith was paid for the crops on the right-of-way. When treble damages are recoverable they ought to be assessed by the jury, under proper instructions. The jury are to give all damages authorized by the statute. (Civil Code, §§ 285–288; Comp. Laws of 1885, ch. 113, §§ 1, 2.)

4. Treble damages, jury to assess.

The judgment of the trial court must be corrected by deducting the 50 cents allowed for grass, and the treble damages given by the court for the trees, etc.

The case will be remanded, with direction to modify the judgment accordingly.

All the Justices concurring.